MÉNDEZ, APPELLANT, v. REGISTRAR OF CAGUAS, RESPONDENT.

APPEAL from a Decision of the Registrar of Property of Caguas Refusing to Record a Forced Sale.

No. 569.—Decided July 16, 1923.

RECORD OF TITLE—CANCELATION OF MORTGAGE—FORECLOSURE—FORCED SALE.—A registrar having canceled a junior mortgage because the property had been sold at auction to the mortgagee in proceedings to foreclose a senior mortgage, the proceeds of the forced sale covering only the amount of the senior mortgage, record of the forced sale can not be refused for the reason that the said mortgagee had agreed to postpone the foreclosure of his mortgage until the mortgagor had paid certain personal debts which appeared from the registry to be still unpaid, the said agreement existing and appearing from the records of the registry at the time of the cancelation, for it would not

only be in contradiction with the cancelation made upon foreclosure of the senior mortgage, but would also impair the force and effect of the cancelation made by reason of the sale, especially if it is considered that the personal creditors may bring against the foreclosing mortgagee any action that they may have, although the property may be recorded in his name.

Id.—Area of Land—Unit of Measurement.—The fact that the Act of August 18, 1913, as amended by Act No. 3 of March 10, 1914, permits the use of the *cuerda* as a unit of measurement in land areas does not mean that it is not necessary to give the equivalent in the metric system, for the establishment of that system was the very purpose of the Act.

The facts are stated in the opinion.

*Messrs. F. González* and *A. Mena* for the appellant.

The respondent appeared by brief.

Mr. Justice Aldrey delivered the opinion of the court.

It appears from the Registry of Property of Caguas, according to certificates before us, that a certain property was mortgaged by José B. Méndez and his wife to Juan Méndez Santiago and three other persons to secure certain personal obligations contracted by Méndez; that an action brought by the Porto Rico Fertilizer Company against Méndez and his mortgagees for the rescission of this mortgage was recorded in the registry; that there was also recorded a later agreement between the Porto Rico Fertilizer Company, other personal creditors of Méndez and the said mortgagees whereby the mortgagees agreed to postpone their mortgage rights until after the mortgagors had paid their personal obligations to the several creditors named, giving them preference to their mortgage, which should not be cancelled or foreclosed by the mortgagees or any of them while the agreement existed. Also another marginal note showed the postponement of the lien of the Porto Rico Fertilizer Company. On March 6, 1923, in an action of debt brought by Juan Méndez Santiago against José B. Méndez Jiménez and his wife the District Court of Humacao ordered the cancelation of a mortgage of the Banco Territorial y Agrícola of later date than that in favor of Juan Méndez Santiago and others, because the proceeds of the sale had covered only the sum of $4,500.12, the amount of the obligations paid by the plaintiff

because of the failure of José B. Méndez Jiménez to pay them and this cancelation was made, according to the statements of the parties in their respective briefs.

Thereafter there was presented for record in the registry deed No. 259 executed on November 23, 1922, whereby the marshal of the District Court of Humacao sold to Juan Méndez Santiago the same property at the auction sale in the suit brought by him against José B. Méndez Jiménez and his wife to recover $4,500.12, the amount of three obligations paid by the plaintiff, with interest thereon.

The registrar refused to record that deed of sale for the reasons stated in the following decision written at the foot of the deed:

"Record of this deed No. 259 executed in Humacao on November 23, 1922, before notary Francisco González Fagundo is refused, after the examination of another deed, because although in the said deed it is not stated that the debt sought to be recovered was secured by a recorded mortgage, which fact appears from the registry because prior to this deed there was presented an order of the District Court of Humacao made in the same case and ordering the cancelation in the registry of a mortgage existing on the property sold for the reason that the execution issued to Juan Méndez Santiago against José B. Méndez shows that the proceeds of the forced sale were only $4,514.12 offered by the plaintiff as covering his credit secured by mortgage and there being, therefore, no balance to apply to the payment of the junior mortgage, yet it clearly appears now that the debt for the payment of which the property was sold at auction was the same that appears secured by a mortgage recorded in the registry, it appearing also that the said mortgage was postponed by the plaintiff and creditor Juan Méndez Santiago until after said debtor José B. Méndez should have paid other debts to different persons, and the registry does not show that such obligations have been paid; and a cautionary notice is entered instead for the legal period of 120 days in favor of Juan Méndez Santiago * * *, with the curable defect of failure to state the equivalent area of the property in the metric system."

As appears from this decision, the registrar's only ground

for refusing to record the forced sale was that the property had been sold for the payment of a mortgage which appeared from the registry to have been postponed until after the mortgagor had paid certain personal obligations to other creditors, and that from his records it did not appear that the said obligations had been paid.

Without considering at present the effect that the mention of personal obligations in the registry may have on ordinary foreclosure proceedings, the registrar having canceled the mortgage of the Banco Territorial y Agrícola by order of the court based on the fact that as the property had been sold for the payment of the senior mortgage of Juan Méndez Santiago and nothing had been left for the payment of the other according to the legal status upon the books of the registry, he can not now refuse to record the said sale which the registry shows to have been made and to have produced certain results without contradicting himself by first accepting the validity of the judicial sale in making the cancelation and afterwards denying such validity to it when it is sought to be recorded; and the result would be the anomaly of a refusal to record a sale which had been accepted to operate a cancelation, aside from the fact that the refusal to record takes away the validity and effect of the cancelation made because of the said sale. In the writ issued for the said cancelation it was said that the property had been sold for the payment of the mortgage in favor of Juan Méndez Santiago, and as it appeared from his records that such mortgage was postponed until after the debtor had paid other personal obligations, if for that reason the mortgage could not be foreclosed and the property sold at auction, he should have refused to cancel the mortgage of the bank, but since the cancelation was made he can not now deny the validity of the sale.

Furthermore, as said in the syllabus in the case of *Bianchi v. Pierazzi,* 25 P. R. R. 587, the purchaser of a mortgaged property steps into the shoes of the debtor, that is to say,

when the mortgage falls due the mortgagee's remedies against the purchaser are exactly the same as they would have been against the mortgagor. Similarly in this case, if the personal creditors for whose benefit purchaser Méndez Santiago postponed his mortgage have any action against him because he recovered the debt secured by the mortgage and was given in payment thereof the property so encumbered before they had recovered their debts, it may be asserted although the property is recorded in his name.

As to the curable defect mentioned by the registrar of failure to state the area of the property in the metric system, he must be sustained under previous decisions of this court, for although the Act of August 13, 1918, as amended by Act No. 3 of March 10, 1914, permits the use of the *cuerda* as a unit of measurement in land areas, yet as the purpose of the said Act was to establish the metric system and the hectare as a unit of measurement, the fact that the use of the *cuerda* is permitted, the equivalent of the *cuerda* in the metric system being given, does not mean that it is not necessary to give the equivalent.

The decision appealed from must be reversed in so far as it refused to allow the record.

*Reversed in part.*

Chief Justice Del Toro and Justices Wolf and Franco Soto concurred.

Mr. Justice Hutchison concurred in the judgment.